TROY MOTOR SALES CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9345, 11678. Promulgated December 4, 1928.

*Theodore B. Benson, Esq.*, for the petitioner.
*J. F. Greaney, Esq.*, for the respondent.

548

554

OPINION.

TRAMMELL: With respect to the first allegation of error, the petitioner contends that the additional salaries were incurred as a result of a resolution of the board of directors adopted June 9, 1920, and that thereafter and throughout the years involved it was legally obligated to pay to Troy and Coger the amounts in controversy. The resolution of June 9, 1920, was not introduced in evidence, nor is there any testimony as to what was contained in it. The entry made under date of June 30, 1920, by which Troy and Coger were credited with the additional amounts for 1920, purports to have been made in accordance with the resolution, but the record is silent as to the authority for the credits made for 1921. The fact that the additional amounts were credited to the officers on the petitioner's books does not of itself warrant the conclusion that additional salaries were authorized or were incurred as a result of the resolution in question, or that the petitioner was definitely obligated to pay them. So far as the record shows, the resolution might have made the payment of the amounts conditional. It may be that it was on account of some condition contained in the resolution that the amounts were never actually paid but resulted in their being transferred to surplus in March, 1922. The action of the respondent in disallowing the additional salaries is therefore approved because of insufficient evidence.

With respect to the second assignment of error, the trial was limited to the question of whether there existed such an abnormal condition affecting capital or income within the purview of section 327 of the Revenue Acts of 1918 and 1921 as would entitle the petitioner to have its tax liability determined under the provisions of section 328 of these Acts.

The petitioner contends that the ownership and possession of the territorial contracts for the distribution of Nash and Lafayette automobiles under which it operated, and which were acquired in a manner which prevented their inclusion in invested capital, created an abnormal condition affecting capital.

The contracts with the Nash Motors Co. were the standard territorial contracts under which all distributors of Nash automobiles operated. They were for periods of only one year. There is nothing in the record to indicate that these contracts were materially different from those under which distributors of automobiles in general

operated. The contracts are not shown to have had any bonus value. They were obtained without any capital outlay or the issuance of stock and apparently the form of contract made by the manufacturers with distributors generally. The petitioner happened to be operating under the contract in question during a period of unusual and abnormal demand for the products. What was abnormal was the demand—nothing abnormal is shown about the asset, that is, the contract, or the capital of the petitioner in so far as it is concerned. Would the fact that a corporation had a contract which, under ordinary and usual business conditions, would not have created an abnormal condition affecting capital, create an abnormal condition affecting capital merely because of unusual or abnormal business conditions wholly aside from the contract which created demands for the product? We think not. If an unusually large income were produced under these conditions, it would seem that the situation came within that provision of section 327 (d) to the effect that that subdivision shall not apply to any case in which the tax is high merely because the corporation earned a high rate of profit upon a normal invested capital. It appears that the large income here was attributable to the business conditions of the period. The business was abnormal, but every fortunate circumstance or advantage in business operations is not an abnormality affecting capital within the meaning of section 327. The business of distributing automobiles presupposes that the distributors will at least have a source of supply and that unless they manufacture the automobiles they will obtain them under some form of agreement or contract with those who do manufacture them. This being true, we are unable to conceive how a contract which is not shown to be materially different from the contracts for obtaining automobiles under which distributors in general operate creates an abnormality.

Another ground relied upon is that the petitioner's bank accepted the drafts on the dealers as cash deposits and about one-half of the dealers paid for automobiles in advance of their shipment from the factory. The petitioner contends that it was able to transact the volume of business it did on the small amount of invested capital it had largely on this account. It is contended that because of these facts, the petitioner was during the year 1920 supplied with approximately $730,000 of borrowed capital. There is no direct evidence as to the total payments for automobiles in advance of shipment, and the amount of $730,000 as stated by the petitioner in its contentions results from the application to all of the petitioner's sales at wholesale of the findings made by a certified public accountant during an investigation of certain dealers' accounts selected at random. There is nothing in the record to show or even approximate the average

amount for the year of money paid in advance. However, dividing the amount of $730,000 by 12 would give an average monthly amount of $60,833.33. If this amount be considered as borrowed money, it is not shown that the actual borrowing of such an amount is unusual or abnormal in this business. We are without evidence on the question. It may well be the usual and ordinary thing for distributors to do business on the same basis this distributor did, or to actually borrow as large or even larger percentage of its actual capital investment.

In drawing sight drafts with bills of lading attached on dealers, the petitioner was following a policy which it had followed from the time of its organization, and for all the record discloses the policy then generally followed by distributors of automobiles or a policy engaged in generally. There is nothing, however, in the record to show that if the petitioner had not drawn drafts on dealers, and that if it had not received payments from them in advance of shipments it would not have made the sales that it did. On the contrary, the record clearly shows that during these years the demand for automobiles exceeded the supply, and that the chief concern of the petitioner's officers was in obtaining automobiles to fill the orders received and not in making sales.

A further ground relied upon by the petitioner is that during the years in question its income resulted primarily from the services of Troy and Coger, its two officers, for which they were paid salaries of $12,000 a year each. It is contended that, for 1920, $50,000 each would have been reasonable compensation for the services rendered by them. There is, however, not sufficient evidence that the salaries paid were inadequate, that these officers could have obtained more elsewhere for the same services, or that others equally effective could not have been obtained for the same salaries.

From a consideration of all the evidence in connection with the various contentions raised by the petitioner, we are not convinced that during the years here involved there existed any abnormalities in income or capital which would entitle the petitioner to have its profits-tax liability computed under the provisions of section 328 of the Revenue Acts of 1918 and 1921.

The remaining assignment of error involves the question of the collectibility of the last and unpaid quarterly installments of the taxes computed and reported by the petitioner on its returns. This question was not raised by the original petitions but was raised for the first time in an amended petition filed in May, 1927. The petitioner has raised no question as to whether the assessment and collection of the deficiencies of $7,489.25 and $6,139.88 for 1920 and 1921 as proposed by the respondent are barred, and therefore that question is not involved in these proceedings.

Petitioner has suggested in its brief that there might be some doubt as to whether we have jurisdiction to determine whether the collection of the unpaid portions of the original assessments in these cases is barred. The same question was presented and decided in the case of *Peerless Woolen Mills*, 13 B. T. A. 1119, where we held that where the respondent determined a deficiency and a portion of the tax reported and assessed on the return remained unpaid, we had jurisdiction to determine whether collection of the unpaid portion was barred. We are therefore of the opinion that we have jurisdiction of the matter raised by the petitioner in the instant case.

Section 250 (d) of the Revenue Act of 1921 provided that no suit or proceeding for the collection of any income, excess-profits or war-profits taxes due under that Act or under prior income, excess-profits or war-profits tax Acts should be begun after the expiration of 5 years after the date when the return was filed. As the petitioner filed its returns on September 15, 1920, and September 15, 1921, the time for collection of the tax due on such returns would expire on September 15, 1925, and September 15, 1926, under the Act of 1921, but prior to either of the foregoing dates and on June 2, 1924, the Revenue Act of 1924 was enacted. Section 278 (d) of that Act provides in part as follows:

Where the assessment of the tax is made within the period prescribed in section 277 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax. * * *

The petitioner does not contend that the unpaid amounts of $30,731.11 and $9,615.34 for 1920 and 1921 were not assessed within the proper periods of limitation applicable to the respective years or that the 5-year period of limitation for collection had expired when the Revenue Act of 1924 was enacted, but contends that section 278 (d) of that Act did not operate to extend the time for collection beyond the 5-year period provided in the Revenue Act of 1921. We have heretofore considered this question and have held that where the Revenue Act of 1924 was enacted prior to the expiration of the 5-year period for collection of a tax previously assessed the respondent had 6 years from the date of the assessment within which to begin a suit or other proceeding for the collection of such tax under section 278 (d) of the Revenue Act of 1924. *Art Metal Works*, 9 B. T. A. 491; *Estate of John W. Peale*, 13 B. T. A. 1101. We think our former holdings are applicable to the instant case and therefore conclude that section 278 (d) of the Revenue Act of 1924 extended the time for making collection of the unpaid portion of the tax for 1920 until November 8, 1926, and until November 10, 1927, for the unpaid portion of the tax for 1921. Since section 278 (d) of the Revenue Act

of 1926 also provided for a similar period of 6 years after assessment for collection, no modification in the foregoing dates was made by that Act.

The petition for the redetermination of the deficiency for the fiscal year 1920 was filed with the Board on February 6, 1926, the notice of the deficiency having been mailed on December 12, 1925. It thus appears that not only the deficiency notice was mailed but that this proceeding was instituted within the period of 6 years from the date of the assessment of the tax shown by the return.

The question then to be determined first is whether under the facts of this case the collection of the tax became barred while this proceeding was pending before the Board. If it did not, then it is unnecessary to determine the validity of any of the consents or alleged consents in writing for any extension of time within which collection might be made. If collection of the tax for either 1920 or 1921 is barred, it became barred while these proceedings were pending. The real question is whether the Commissioner was, while these proceedings were pending, prohibited from beginning distraint or proceedings in court for collection as provided in section 277 (b) of the Revenue Act of 1926.

If he was so prohibited, then the running of the statute of limitations was suspended during the period of such prohibition.

The Revenue Act of 1926 was approved February 26, 1926. That Act specifically prohibited the Commissioner from collecting the tax while a proceeding involving the deficiency was pending before the Board. The 6-year period for collection of the 1920 tax did not expire until November 8, 1926, and the 6-year period for the collection of the 1921 tax did not expire until November 10, 1927. Both proceedings were pending before the Board when the Revenue Act of 1926 was approved. From that date at least the prohibitory provisions of the statute relating to the collection of taxes while the proceedings were before the Board were effective.

The question as to whether the Commissioner was prohibited from collecting the unpaid amount of tax shown due on the return while a case was pending before the Board, was considered and decided by the Circuit Court of Appeals for the Fifth Circuit in the case of *Peerless Woolen Mills* v. *Rose*, 28 Fed. (2d) 661. The court stated as follows:

The district judge, being of opinion that the Board of Tax Appeals acquired jurisdiction only of the assessment for the deficiency, held that R. S. §3224 prohibits a suit to enjoin the collection of the original assessment. In that opinion it was also held that appellant was liable for the full amount of the deficiency assessment, but that the original assessment was barred by the

statute of limitations. The correctness of those rulings on the merits is not now before us for consideration, but it is proper that we should at this time pass upon the appeal from the district court.

On the question of jurisdiction of the Board of Tax Appeals, we are of opinion that the conclusion of the district judge was wrong. That Board was given the power by the act creating it to determine the correctness of deficiency assessments made by the commissioner of internal revenue. Revenue Act of 1924 §§ 274, 279, 308, 312, 900. It is not bound by the assessment, but has power to raise or lower it, or to hold that there was no deficiency. In order to act intelligently and determine the total amount of tax due, it had the right to inquire whether any part of the tax was erroneously found to be due. By the Revenue Act of 1926 it is provided in §284 (d) that if the taxpayer appeal to the Board, he cannot sue to recover any part of the tax, but under sub-division (e) of that section the Board was given jurisdiction, if it should find that there was no deficiency, and that the taxpayer had made an over-payment of the tax, to determine the amount of such over-payment and direct that it be credited or refunded. Therefore, since the passage of the Revenue Act of 1926, the Board has jurisdiction not only to re-determine a deficiency, but also where there is no deficiency to ascertain and order that credit be given for any over-payment of the tax. We are of opinion that it results from these statutory provisions that, while the Board has no jurisdiction where there is no deficiency assessment, yet if there is a deficiency assessment, the jurisdiction of the Board extends to the whole controversy, to the end that it may determine or re-determine the correct amount of the tax.

The jurisdiction of the Board having been shown to exist, §274 (a) of the Revenue Act of 1926 is applicable. That section prohibits a proceeding by distraint until the decision of the Board has become final, and confers upon the District Courts of the United States jurisdiction to enjoin collection of the tax, notwithstanding the provisions of R. S. §3224. Under the admitted facts, we are of opinion that it was error to refuse to issue an injunction.

In our opinion the court has clearly and concisely set forth the law as it affects this case. If the Commissioner could and should have been enjoined from collecting the unpaid amount of tax shown on the return while the case was pending before the Board, the right of the Commissioner to collect was extended until after the decision of the Board had become final.

In view of the foregoing, it is our opinion that the statute of limitations applicable to the collection of the unpaid amounts shown on the returns for the fiscal years 1920 and 1921 has not expired.

Since the 6-year period for the collection of the tax had not expired when the deficiency notices were mailed or when these proceedings were instituted, the statute has not now run, without reference to any extensions which might have been agreed upon by the taxpayer and the Commissioner, and it becomes unnecessary to discuss the so-called waivers or consents in writing.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*